UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MARY GENOSKY, Personal Representative   Civil No. 11-CV-2230 (MJD/LIB)
of the Estate of Michael D. Genosky, Decedent,

    Plaintiffs,

v.   **REPORT AND RECOMMENDATION**

METROPOLITAN LIFE INSURANCE
COMPANY & AON CORPORATION,

    Defendants.

---

  This matter came before the undersigned United States Magistrate Judge upon the Motion of the Defendant Aon Corporation to Dismiss the Complaint. The parties agreed to submit the motion on the papers without oral argument. The case has been referred to the undersigned Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons outlined below, the Court recommends that the Defendant's Motion be GRANTED.

**I. BACKGROUND**

  In September 1982, Michael Genosky began working as a sales manager at Combined Insurance Company of America. (Compl. [Docket No. 1], ¶ 1). Sometime after Mr. Genosky began working at Combined Insurance Company of America, the company merged to form Aon Corporation. Id.

  While employed at Aon, Mr. Genosky applied for and received life insurance in a group policy issued to Aon Corporation by Defendant Metropolitan Life Insurance Co. ("MetLife"). (Compl. ¶ 8). MetLife acted as the insurance provider and Aon Corporation acted as the plan administrator. (Compl. ¶ 9).

On January 14, 2004, Mr. Genosky took a leave of absence from work due to a disability after being diagnosed with cancer. (Compl. ¶ 9). On July 15, 2004, Aon Corporation terminated Mr. Genosky's employment. Id. After Mr. Genosky was terminated, his life insurance was extended pursuant to the terms of his policy. (Compl. ¶ 12). MetLife confirmed Mr. Genosky's continued coverage via a letter dated August 9, 2004. Id.

Mr. Genosky died on August 11, 2008. (Compl. ¶ 13).

On December 3, 2008, after Mr. Genosky's death, his heirs requested information regarding his life insurance policy. (Compl. ¶ 14). On December 18, 2008, MetLife informed the Genosky family that the policy was cancelled on November 28, 2005, for failure to submit medical information to support his ongoing disability. (Compl. ¶ 15). However, according to the Complaint, during that time period, Aon Corporation had actual knowledge of Mr. Genosky's ongoing disability, medical documentations confirming that disability, and MetLife's attempt to cancel his policy. (Compl. ¶ 16). Nevertheless, Aon Corporation did not take any steps to correct MetLife's mistaken belief that Mr. Genosky had not submitted any information confirming his disability. Id. In fact, in August 2007, Aon Corporation processed a change-of-beneficiary form for the MetLife policy. (Compl. ¶ 17).

On January 5, 2011, MetLife denied Plaintiff's formal claim for life insurance benefits. (Compl. ¶ 19). Thereafter, Plaintiff appealed the decision and offered further proof of Mr. Genosky's ongoing disability up to his death. (Compl. ¶ 20). On July 12, 2011, MetLife affirmed the denial of benefits. (Compl. ¶ 22).

On the basis of the facts alleged in the Complaint, Plaintiff argues that the Defendant MetLife breached the insurance policy by failing to pay the Plaintiff life insurance benefits. (Compl. ¶ 25). Plaintiff also alleges that the Defendant Aon Corporation breached its obligations as

plan administrator. (Compl. ¶ 26). The Complaint alleges that the Plaintiff brings her claim pursuant to 29 U.S.C. § 1132(a).

Presently before the Court is Defendant Aon Corporation's Motion to Dismiss the Complaint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998). Moreover, all reasonable inferences from the facts alleged in the complaint must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004); Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted). Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id. Courts must undertake the "context-

specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See Iqbal, 129 S.Ct. 1937 at 1950, 1952. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Farnham Street Financial, Inc. v. Pump Media, Inc., 2009 WL 4672668 at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 129 S.Ct. at 1949).

Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555. When analyzing a complaint on a 12(b)(6) motion to dismiss, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. In addition, "[r]ule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### III.   DISCUSSION

    A.    **Claim for Benefits Under 29 U.S.C. § 1132(a)(1)(B)**

Defendant Aon argues that Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) should be dismissed because the Complaint fails to allege that it played any role in deciding Plaintiff's eligibility for benefits. (Def's Mem., p. 4). Instead, according to Aon, MetLife had sole discretionary authority to approve or deny claims based on the terms of the Plan itself. Id.

Plaintiff contends that the facts alleged in the Complaint are sufficient to state a claim for relief under 29 U.S.C. § 1132(a)(1)(B) because enough facts demonstrate that Aon "controls the administration of the plan." (Pl's Mem., p. 9). For instance, the Plan lists Aon as the employer and plan administrator. (Pl's Mem., p. 9). Moreover, Plaintiff argues that Aon exercised control over

4

the plan by processing a change-of-beneficiary form submitted by the Plaintiff.  (Pl's Mem., p. 4).  Plaintiff also submits a number of documents not referenced in the Complaint from Aon employees which she argues demonstrates Aon's control over plan determinations.  (Pl's Mem., p. 5).

The employee benefit plan itself is ordinarily the primary defendant in an action to recover benefits under 29 U.S.C. § 1132(a)(1)(B).  See Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 740 (8th Cir. 2002).  ERISA "does not define 'administrator' in terms of what one does, but rather provides means of identifying who or what is the 'administrator.'" Werb v. ReliaStar Life Ins. Co., __ F.Supp.2d__, 2012 WL 175026, at *7 (D. Minn. Jan. 20, 2012) (citing 29 U.S.C. § 1002(16)(A)(i) (stating that the administrator is generally "the person so designated by the terms of the instrument under which the plan is operated").  However, in some situations, the proper defendant can include the party who "controls administration of the plan." Kendall v. Int'l Assn. of Bridge, Structural, & Ornamental Iron Workers Local 793 Pension Plan, 2011 WL 1363996, at *4 (D. Minn. Apr. 11, 2011)(citing Layes v. Mead Corp., 132 F.3d 1246, 1249 (8th Cir. 1998)).   In such situations, courts examine a party's "role in an ERISA plan to determine whether it in fact administered the plan."  Price v. Xerox Corp., 379 F.Supp.2d 1026, 1028 (D. Minn. 2005)(citing Ross, 285 F.3d at 743-44).

In Slayhi v. High-Tech Institute, Inc., 2007 WL 4284859, at *7 (D. Minn. Dec. 3, 2007), the Court addressed two questions in a claim for disability benefits under ERISA, "First does the fact that High-Tech [the employer] is defined as the 'administrator' of the plan under § 1002(16)(A)-*by itself*-make High-Tech a proper defendant under 29 U.S.C. § 1132(a)(1)(B)? Second, if the answer to the first question is 'no,' then does the fact that High-Tech exercises plan-level administrative responsibility make it a proper defendant under 29 U.S.C. § 1132(a)(1)(B)?" (emphasis in original).  The Court answered both questions in the negative and held that High-Tech, the

5

Defendant/employer, was not a proper defendant even though it was named as the "administrator" under the plan because it *only* exercised plan level administrative responsibility. In Slayhi, the Court reasoned that when a plaintiff seeks an award of benefits under 29 U.S.C. § 1132(a)(1)(B), the proper defendant is the "party with authority, under the relevant plan documents to pay benefit claims from Plan assets" and who has "the final authority to decide individual claims for benefits" Slayhi, 2007 WL 4284859, at *10. The court in Slayhi made a distinction between "plan administrators" who make "plan-level decision about covering employees (e.g., whether employee *x* will be covered at all – for *anything* – under the policy" including "decisions about premium collection and employee enrollment," and "claim administrators" who make "claim level decisions about paying benefits (e.g., to what extent employee *x's* visit to doctor *y* visit to doctor *y* on date *z* is covered)." Id., at *3, *7 (emphasis in original); see also Werb, __F.Supp.2d__, 2012 WL 175026, at *5 (noting the distinction between plan administrators and claim administrators under ERISA). "Put another way, if the court ordered [insurer] to pay benefits in this case, such a payment would come from the insurance plan . . . But if the court ordered [the employer or plan administrator] to pay benefits in this case, such a payment would not come from the insurance plan; it would instead come from [the employer's] assets. Payment from [the employer's] assets is not the payment of plan benefits, but the payment of damages." Id. at *10.

In this case, based on the facts alleged in the Plaintiff's Complaint, the Court finds that the Plaintiff has not alleged enough facts to create a plausible claim of relief against Aon under 29 U.S.C. § 1132(a)(1)(B). Here, the Complaint contains no allegations that Aon had the authority to pay benefit claims from plan assets. The language of the Plan itself supports this interpretation. First, the Plan lists "Aon Corporation, 200 E. Randolph, Chicago, Illinois 60601" as the "Name and Address of Employer and Plan Administrator." (Turner Aff. [Docket No. 14], Ex. A., p. 23).

Plaintiff contends that this fact shows that Aon acted as an ERISA administrator and can be sued under 29 U.S.C. § 1132(a)(1)(B).  However, as the Court stated in Slayhi, merely being listed as the plan administrator does not create a claim under 29 U.S.C. § 1132(a)(1)(B).  See Slayhi, 2007 WL 4284859, at *8-10.  Moreover, the Plan states that the "Employer reserves the right to change or terminate the Plan at any time."  (Turner Aff. [Docket No. 14], Ex. A., p. 23).   Likewise "claims forms needed to file for benefits under the group insurance program can be obtained from the Employer who will be ready to answer questions about the insurance benefits and to assist you or, if applicable, your beneficiary in filing claims."  Id. at 24.  Thus, all the duties specifically assigned to Aon under the Plan merely show that it has "administrative responsibilities under the plan, those responsibilities relate solely to the collection of employee premiums and to enrolling and disenrolling employees at the plan level."  Slayhi, 2007 WL 4284859, at *10.

 Other allegations in the Plan show that MetLife possessed the authority to pay benefit claims from plan assets subjecting it to ERISA liability, not Aon.  The Plan reads that, "[a]fter MetLife receives your claim involving a disability determination, MetLife will review your claim and notify you of its decision to approve or deny your claim." (Turner Aff. [Docket No. 14], Ex. A., p. 25).  "If the claim is denied because MetLife did not receive sufficient information, the claims decision will describe the additional information needed and explain why such information is needed." Id. at p. 26.  "If MetLife denies your claim, you may appeal your decision. . . After MetLife receives your written request appealing the initial determination, MetLife will conduct a full and fair review of your claim." Id.

However, as the Plaintiff correctly notes, the Plan reads that "for some plans such claims involving disability determinations are decided by employers.  If that is the case for your plan, your

7

employer rather than MetLife may administer the procedures below." Id. at 25.  A clause in the Plan also states that

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

Id. at 26.  While this language does suggest that, at least in some situations, an employer may act as the claim administrator with authority to pay claim specific benefits and decide whether to deny the payment of benefits, no facts are alleged in the Complaint to support that Aon acted as such in the present case.

For instance, according to the Complaint, Aon Corporation had actual knowledge of Mr. Genosky's ongoing disability, medical documentation confirming that disability, and MetLife's attempt to cancel the policy.  (Compl. ¶ 16).   While this shows that Aon knew about Mr. Genosky's disability, it in no way shows that Aon had any authority to actually pay the life insurance benefits or decide whether Plaintiff appropriately was entitled to such benefits. See e.g., Williams v. UNUM Life Ins. Co. of Am., 250 F.Supp.2d 641, 645 (E.D. Va. 2003) (employer not a proper defendant even where plan document listed employer as plan administrator, but all benefits determinations made by insurer).  In addition, in August 2007, Aon Corporation processed a change-of-beneficiary form for the MetLife policy.  (Compl. ¶ 17).  However, this fact further supports that Aon merely acted as the plan administrator and had no authority "to decide claims for [life insurance] benefits." Werb, 2-12 WL 175026, at *5.[1]

---

[1] In fact, MetLife, in its own answer admits that it was the claims administrator and that Aon was the Plan administrator. (MetLife Ans. [Docket No. 9], ¶ 9).

8

For these reasons, the Court recommends that Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) be dismissed.[2]

### B. Claim for Benefits Under 29 U.S.C. § 1132(a)(3)(B)

Aon argues that Plaintiff's claim under 29 U.S.C. § 1132(a)(3)(B) should be dismissed because it seeks monetary damages that are not appropriate equitable relief under § 1132(a)(3)(B). (Def's Mem., p. 3).

Plaintiff contends that the relief she seeks is properly seeking equitable relief. Plaintiff argues that even though she is seeking monetary damages, such an award is appropriate because it is a form of "make whole" relief available from fiduciaries for breaches of fiduciary duties. (Pl's Mem., p. 13).

Under 29 U.S.C. § 1132(a)(3)(B), a plan participant or beneficiary may bring a civil action "to obtain other appropriate equitable relief (1) to redress . . . violations [of this subchapter or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). The section allows plan participants and beneficiaries to "seek equitable remedies in [their] individual capacit[ies] for a breach of fiduciary duty not specifically covered by the other enforcement provisions of section 1132." Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 943 (8th Cir. 1999)(citing Varity Corp v. Howe, 516 U.S. 489, 512 (1996)). "Though the Supreme Court characterized section 1132(a)(3) as a 'catchall' or 'safety net,' [it] is not a limitless free-for-all. The plain language of the statute limits relief to 'appropriate equitable relief.'" Kerr, 184 F.3d at 943. Relief under 29 U.S.C. § 1132(a)(3)(B) is limited to classic equitable remedies

---

[2] The Plaintiff has submitted the affidavit of Kirby Dahl (Docket No. 21) and attached exhibits in support of her motion to dismiss. However, the Court does not consider these exhibits because on a motion to dismiss it is constrained to consider the Complaint itself and documents incorporated by reference therein. However, the Court does appropriately consider the plan itself because it is referenced in the Complaint. Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (citing Venture Assoc's Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 2003) (stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim")).

such as injunctive, restitutionary, or mandamus relief, and does not extend to compensatory money damages. Id.

"The basic distinction between equitable restitution and compensation focuses on the genesis of the award sought by the plaintiff. A restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands. Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." Kerr, 184 F.3d at 944.

The instant case mirrors Pichoff v. QHG of Springdale, Inc., 556 F.3d 728 (8th Cir. 2009). There, the Plaintiff, Dr. Pichoff, was employed by Northwest Health System and participated in an ERISA governed health and welfare plan underwritten by Aetna Life Insurance Company and administered by Triad. The life insurance policy was underwritten by Sun Life Assurance Company of Canada. Through the health and welfare plan, Dr. Pichoff elected an option for life insurance coverage. The health and welfare plan allowed employees to extend life insurance benefits for employees who suffered from permanent and total disability. However, to receive the benefits, an employee was required to submit proof of disability. After being diagnosed with multiple myeloma, Dr. Pichoff was terminated by his employer and later succumbed to cancer. The administrators of Dr. Pichoff's estate brought a breach of fiduciary duty claim seeking to recover the amount of Dr. Pichoff's life insurance benefits against Northwest and Triad.

The court held that the term "other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3)(B) was "limited to relief that was 'typically available in equity (such as an injunction, mandamus, and restitution, but not compensatory damages).'" Pichoff, 556 F.3d at 731 (citing

Mertens v. Hewitt Assocs., 508 U.S. 248, 256-57 (1993)). It further noted that while restitution can in some circumstances include monetary damages, not all monetary relief is available under 29 U.S.C. § 1132(a)(3)(B). Id. Specifically, restitution that is compensatory in nature is not recoverable under 29 U.S.C. § 1132(a)(3)(B). Id. However, monetary relief in the form of restitution is generally available only if the action seeks "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)). "To determine whether a plaintiff requests legal or equitable relief, 'we ask whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, and whether the money sought is specifically identifiable as belonging in good conscience to the plaintiff." Pichoff, 556 F.3d at 732 (citing Calhoon v. Trans World Airlines, Inc., 400 F.3d 593, 596-97 (8th Cir. 2005)).

In Pichoff, the court dismissed plaintiff's 29 U.S.C. §1132(a)(3)(B) claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Court held that the relief the plaintiff was seeking was compensatory in nature because the "appellees did not benefit from the lapse of Dr. Pichoff's initial life insurance policy, and they retain no funds identifiable as belonging to appellant. Rather, appellant seeks compensation for the benefits that would have been paid to Dr. Pichoff's estate had the policy not lapsed." Pichoff, 556 F.3d at 732.[3]

---

[3] The Court recognizes that Pichoff was decided before CIGNA Corp. v. Amara, 131 S.Ct. 1866 (2011) upon which the Plaintiff relies for her contention that the Court has recently expanded the scope of relief available under 29 U.S.C. § 1132(a)(3). However, the Court finds that the holding CIGNA does not alter the decision in Pichoff or the Court's analysis of Plaintiff's claim. In CIGNA, the Supreme court was faced with a change in the nature of the pension plan provided to CIGNA's employees. CIGNA Corp., 131 S.Ct. at 1870. Originally, the plan "provided a retiring employee with a defined annuity calculated on the basis of his preretirement salary and length of service." Id. However, the new plan provided the retiring employees with a lump sum payment. Id. The Court determined that CIGNA's description of the new plan was misleading and caused many employees to be worse off. Id. at 1873. In making its decision, the Court provided several guiding principles for the lower court to consider on remand. The Court discussed the traditional power of an equity court to reform contracts and requiring CIGNA to do what it promised and not take away benefits under the new plan that employees had under the old plan. Id. at 1880. Neither of those issues presented

Here, the Court is faced with the same situation as presented in Pichoff.  The Plaintiff is seeking life insurance benefits that she claims were wrongfully denied.  Like with the claim in Pichoff, the damages Plaintiff seeks are legal in nature because they ask the Court to compensate the Plaintiff for benefits she claims were wrongfully denied.  Such a claim seeks compensation for benefits that would have been paid to the Plaintiff and do not seek any funds that were allegedly improperly retained by Aon.

Moreover, "[a]lthough styled as requests for equitable relief, however, the [Plaintiff is] simply recasting [her] claims for the provision of benefits."  Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc., 2012 WL 832252, *10 (E.D. N.Y. Mar. 12, 2012).  Such repackaging does not create a claim for relief because "we should expect that where Congress provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  Varity Corp., 516 U.S. at 515.  Like in Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F.Supp.2d 730, 738 (S.D. N.Y. 2011), the gravaman of Plaintiff's complaint is that the defendants have "failed to follow proper procedures in denying the claim for benefits, which resulted in an improper denial of benefits owed. . . under the terms of the Plan."   Normally, relief for denial of claims for benefits are addressed under 29 U.S.C. § 1132(a)(1)(B).  Here, Plaintiff brings her claims under this section as well, and although the Court above recommended dismissal of her claim under 29 U.S.C. § 1132(a)(1)(B) against Aon, Plaintiff's claims against MetLife remain.  "The fact that the plaintiff[] ha[s] currently brought [her] § 1132(a)(1)(B) claims against the wrong defendant does not alter the fact that relief

---

themselves in Pichoff or in the present case.  Moreover, CIGNA is factually distinguishable from Pichoff and the present case because CIGNA involved a reformation of a benefits plan while in Pichoff and the instant case, the plaintiff seek to have the Plan enforced as written in order to receive a benefit due under the Policy. Although CIGNA approved monetary compensation under 29 U.S.C. § 1132(a)(3), the relief was based on a narrow set of facts and the opinion emphasized that such an award was only permitted because it resembled traditional equitable remedies.

was available to her under that section." Staten Island Chiropractic Assocs, PLLC, 2012 WL 832252, at *10; Keir v. Unumprovident Corp., 2010 WL 356678, at *8 (S.D. N.Y. Sept. 14, 2010) ("The fact that the Plaintiffs have not brought a § [1132](a)(1)(B) claim does not alter the fact that benefits are the gravamen of Plaintiffs' remaining request for relief and that redress is available under § [1132](a)(1)(B)"); Klecher v. Metro. Life Ins. Co., 331 F.Supp.2d 279, 288 (S.D. N.Y. 2004) (denying plaintiff's effort to "repackage her unsuccessful breach of fiduciary duty claim to evade both § 1132(a)(1)(B)'s ... and § 1132(a)(2)'s requirement[s]").

That is not to say that the Plaintiff could never obtain equitable relief from the Aon. Even though Plaintiff's claim seeking damages under 29 U.S.C. § 1132(a)(3)(B) fails, courts have allowed employers to bring claims seeking other appropriate equitable relief under that section. See Slayhi, 2007 WL 4284859, at * 16, n. 6 (collecting cases). However, the threadbare allegations in the Plaintiff's complaint seeking "any additional relief the Court deems just and equitable under the circumstances" are not sufficient to state a claim for equitable relief under Fed. R. Civ. P. 12(b)(6). See Staten Island Chiropractic Assocs, PLLC, 2012 WL 832252, at *11 (finding vague claims of equitable relief under 29 U.S.C. § 1132(a)(3) insufficient to survive a motion to dismiss).[4] Plaintiff has not alleged what specific equitable relief she seeks from Aon beyond the payment of benefits she maintains she is owed, which as discussed in Section III.A above, Aon itself cannot provide. Plaintiff has not specified in her Complaint or in her memorandum opposing this motion any relief she seeks beyond the payment of life insurance monetary benefits.

---

[4] Plaintiff also originally brought a claim under 29 U.S.C. § 1132(a)(2). However, in her response to Aon's motion to dismiss, the Plaintiff concedes "generally" that relief under that section is not appropriate. (Pls' Mem., p. 11). Indeed, case law does not support Plaintiff's claim under 29 U.S.C. § 1132(a)(2) because such a claim can only be brought on behalf of the plan rather than on behalf of individual beneficiaries like in the present case. Kendall, 2011 WL 1363996, at *7 (quoting Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999)). Therefore, the Court recommends that Plaintiff's claim under 29 U.S.C. § 1132(a)(2) also be dismissed.

Consequently, the Court recommends that Plaintiff's claim under 29 U.S.C. § 1132(a)(3)(B) should also be dismissed.

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

Defendant Aon Corporation's Motion to Dismiss [Docket No. 10] be GRANTED and Plaintiff's claims against Defendant Aon Corporation be DISMISSED WITHOUT PREJUDICE.

Dated: April 27, 2012                                          s/Leo I. Brisbois
                                                                                                                         LEO I. BRISBOIS
                                                                                                                         United States Magistrate Judge

N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 11, 2012,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.